IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KELLY T. ANDERSON, et al.,<br><br>                    Plaintiffs,<br><br><br>          vs.<br><br><br>CEMEX, INC., et al.,<br>                    Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:12-cv-00136-TC |

This is a pension case governed by the Employee Retirement Income Security Act of
1974 (ERISA), 29 U.S.C. § 1001, et seq.  Plaintiffs are thirty-three former employees of the
Southwestern Portland Cement Company (Southwestern) who each claim that, under ERISA,
they are entitled to benefits payable from Southwestern's Salaried Employees' Retirement Plan
(the Southwestern Plan) for their years of employment from 1985 to 1989.  Defendants denied
Plaintiffs' claims on the ground that the Southwestern Plan was replaced by a plan sponsored by
Southwestern's successor, Martin Marietta (later known as Lockheed Martin).  Defendants
contend that Southwestern transferred all liabilities for Plaintiffs' pensions to Martin, along with
assets to cover the pension obligations previously owed by the Southwestern Plan.  Because
Plaintiffs have received or may receive benefits for the relevant time frame from the Martin Plan,
Defendants disclaim any liability to pay the same benefits from the Southwestern Plan.

The parties filed cross-motions for summary judgment, which raise four issues for the
court.  First, what standard of review should the court apply?  Second, is the court permitted to

consider materials produced in discovery that were not available to Defendants when they denied Plaintiffs' claim?  Third, if Defendants failed to notify Plaintiffs and other employees of the change in plans, is the lack of notice a sufficient basis to award Plaintiffs the benefits they seek? And finally, are Plaintiffs entitled to civil penalties under 29 U.S.C. § 1132(c)?

After careful review of the relevant law and materials submitted by the parties, the court grants Plaintiffs' motion for summary judgment in part and denies it in part.  The court grants the motion on the issue of entitlement to benefits but denies Plaintiffs' request for civil penalties. Accordingly, the court grants Defendants' cross-motion for summary judgment on the penalties issue and denies it to the extent Defendants seek to defend their denial of benefits.

## BACKGROUND

In 1984, Martin Marietta Corporation (Martin) operated a cement plant in Leamington, Utah. On March 21, 1984, Martin entered into a lease agreement in which it agreed to lease the Leamington plant to Southwestern.  Plaintiffs were all employed by Southwestern at the Leamington plant from 1985 to 1989.  On February 16, 1985, Southwestern established the Southwestern Plan for its employees working at the Leamington plant.  The Southwestern Plan is administered by a committee which has the authority "[t]o determine all questions relating to the eligibility of Employees to participate in the Plan," "[t]o compute the amount and kind of benefits payable to the Participants and their Beneficiaries," and "[t]o interpret the provisions of the Plan." (Southwestern Plan § 14.07(a), (b), (e), Dkt. No. 42-1.)

Approximately four years later, on March 31, 1989, Southwestern and Martin agreed to terminate the lease for the Leamington plant.  The termination agreement provided that all Southwestern employees would be terminated and given the option to become Martin employees.

2

It also directed that Southwestern would transfer assets to Martin to cover employees' pension benefits for the years 1984 to 1989.  Plaintiffs chose to continue working for Martin at the Leamington plant beginning April 1, 1989, and were given a pension plan sponsored by Martin (the Martin Plan).  Although the Southwestern Plan agreed to transfer assets and liabilities to the Martin Plan, none of the Defendants notified Plaintiffs of the change.

Shortly after Southwestern and Martin terminated their lease, Martin sold the Leamington plant to Ash Grove Cement Company.  Plaintiffs were terminated by Martin on May 8, 1989, but were re-hired by Ash Grove.  The Martin Plan did not transfer the liability for pension benefits that had been previously transferred from the Southwestern Plan.  After the sale of the plant, the Martin Plan sent Notices of Vested Retirement Income to each Plaintiff, confirming that each had been given full service credit for his or her years of employment with Southwestern.

After terminating its lease with Martin, Southwestern merged with another company in 1991 and became known as Southdown, Inc.  Defendant CEMEX, Inc. acquired Southdown and became the sponsor of the Southwestern Plan, later renamed the CEMEX Inc. Pension Plan.

In March 2010, Plaintiff Jeremy Skeem requested pension benefit information from CEMEX. CEMEX investigated the request and contacted Martin.  Martin confirmed that it had responsibility for Mr. Skeem's pension benefits. CEMEX later gave a full list of former Southwestern employees to Martin, and Martin responded by indicating that it had pension assets for a number of people on CEMEX's list for the period from 1984 to 1989.  With the exception of Mr. Skeem who had previously requested benefits, the Plaintiffs in this case, through counsel, submitted claims for pension benefits to CEMEX on November 5, 22, and 23, 2010.

As a result of discovery in this case, CEMEX received additional documents from Martin, which show that fourteen of the thirty-three Plaintiffs have received or are currently receiving retirement pension benefits from the Martin Plan (or one of its successor plans), and those benefits include their years of employment with Southwestern.  The remaining nineteen Plaintiffs will be entitled to receive benefits from the Martin Plan, which will include benefits for 1985 through 1989.  Consequently, all of the Plaintiffs in this case are either currently receiving benefits from the Martin Plan, or will be entitled to receive such benefits.

After determining that the Martin Plan held Plaintiffs' pension benefits, Defendants issued a denial letter dated May 25, 2011.  Defendants explained the details of their investigation and stated that "Lockheed Martin has indicated that it has assumed the liabilities for providing the SWPC participants a pension for the period 1984-1989."  (Letter from Andrew Miller to Karra J. Porter (May 25, 2011), Dkt. No. 2-4.)  Defendants did not cite any Plan provisions that supported their denial.

To respond to Plaintiffs' claim that no notice had been given of the plan change, Defendants merely stated, "Other than the Claimant's allegation that no notice was given, the Committee is unaware of any facts that suggest notice of such transfer was not given by SWPC and/or Martin Marietta/Lockheed Martin." (Id. at 2.)  But Defendants did not cite and have not produced evidence showing that they gave the required notice or that Plaintiffs received notice of the change from the Southwestern Plan to the Martin Plan.

Plaintiffs appealed Defendants' denial on July 21, 2011. Defendants denied the appeal on October 4, 2011.  Plaintiffs filed their complaint in this case on January 31, 2012.  Plaintiffs assert a first cause of action under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B),

4

seeking recovery of pension benefits from Defendants for their years of service as Southwestern employees between 1984 and 1989. (Compl. ¶ 12, Dkt. No. 2.)  Plaintiffs also assert a second cause of action for civil penalties under 29 U.S.C. § 1132(c).

## ANALYSIS

### I.    Standard of Review

The court first must decide the appropriate standard to be applied to Defendants' decision to deny benefits.  LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan, 605 F.3d 789, 796 (10th Cir. 2010)). "In an ERISA case like this, where both parties move for summary judgment and stipulate that no trial is necessary, 'summary judgment is merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor.'" Cardoza v. United of Omaha Life Ins. Co., 708 F.3d 1196, 1201 (10th Cir. 2013) (quoting LaAsmar, 605 F.3d at 796).

Generally, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  "Where the plan gives the administrator discretionary authority, however, '[the court] employ[s] a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious.'" LaAsmar, 605 F.3d at 796 (quoting Weber v. GE Group Life Assurance Co., 541 F.3d 1002, 1010 (10th Cir. 2008)). Applying the arbitrary and capricious standard, the court's "review is limited to determining whether the interpretation of the plan was reasonable and made in good faith." Kellogg v. Metro.

Life Ins. Co., 549 F.3d 818, 826 (10th Cir. 2008) (quoting Fought v. UNUM Life Ins. Co., 379

F.3d 997, 1003 (10th Cir. 2004)).

      "[T]o be entitled to deferential review, not only must the administrator be given

discretion by the plan, but the administrator's decision in a given case must be a valid exercise of

that discretion."  Gilbertson v. Allied Signal, Inc., 328 F.3d 625, 631 (10th Cir. 2003).  Here, the

parties do not dispute that the Southwestern Plan gives the administrative committee the

authority "[t]o determine all questions relating to the eligibility of Employees to participate in the

Plan" and "[t]o compute the amount and kind of benefits payable to the Participants and their

Beneficiaries."  (Southwestern Plan at 50 (CMX00110), Dkt. No. 42-1.)  But both parties

maintain that Gilbertson supports their competing positions on which standard of review applies.

      Plaintiffs rely on language in Gilbertson where the court quotes 29 C.F.R. 2560.503-1,

which requires that notifications of benefit decisions include "[r]eference to the specific plan

provisions on which the determination is based."  328 F.3d at 635.  The Southwestern Plan also

directs that a denial of benefits must include "a specific reference to the provision or provisions

of the Plan on which the denial is based."  (Southwestern Plan § 10.01(2), Dkt. No. 42-1.)

Because Defendants did not cite to any specific plan provisions in their denial letters, Plaintiffs

argue that the omission shows a failure by Defendants to validly exercise their discretion and the

court should evaluate the case de novo, with no deference given to Defendants' decision.

      Defendants take a different view, contending that they "substantially complied" with the

regulation, which is sufficient under Gilbertson.  328 F.3d at 634-35.  Defendants' position is

that they thoroughly analyzed Plaintiffs' claims, reviewed the relevant materials, and gave a

detailed explanation of the reasons for their denial.  With no procedural irregularity in their

decision-making process, Defendants ask the court to defer to their judgment under an arbitrary and capricious standard.

While Defendants' denial letters did not cite or refer to any specific plan provisions, the case law does not support Plaintiffs' contention that the court must disregard the administrator's discretion based solely on the failure to formally cite a plan provision. Courts instead refuse to defer to an administrator's decision and apply de novo review in cases "where the administrator has failed to apply his expertise to a particular decision." Id. at 632. For example, in Gilbertson, the employer-administrator denied the plaintiff's application for long term disability benefits on the ground that the plaintiff had not provided sufficient evidence of her disability. When the plaintiff appealed the denial, the employer gave the plaintiff the opportunity to provide more medical information, but when the plaintiff submitted additional records, the employer never responded with a final decision. Because the employer "ceased participating in a meaningful dialogue" with the plaintiff and "never got around to exercising its discretion or applying its administrative expertise to reach a final decision," the Tenth Circuit found that the employer had not substantially complied with ERISA's procedural requirements. Id. at 636. Accordingly, it reversed and remanded for the district court to review the plaintiff's claim de novo. Id. at 637.

Here, the evidence shows that after receiving Plaintiffs' claims, Defendants collected and reviewed materials about the different plans and discussed the relevant circumstances before deciding to deny the claims. Defendants also provided a full explanation of the reason for their denial. While the denial letters did not include citations to the specific plan provisions, the letters show that the committee was exercising its discretion in light of its understanding of the different plans that could apply to Plaintiffs' claims. Even though Defendants now refer to multiple plan

provisions to support their decision, it appears their original decision was not based on specific provisions but was instead based on the fact that the Southwestern Plan had transferred its assets and liabilities to the Martin Plan, which led to the conclusion that Plaintiffs would be (or had already been) paid the necessary benefits.  Unlike the cases where de novo review has been applied, this is not a case where Defendants ignored their responsibilities or completely failed to provide a basis for the denial.  Defendants substantially complied with the requirements for denials even if they did not provide the necessary citation to a Plan provision.

But as the court will explain, because Defendants indisputably failed to give the statutorily required notice of the plan changes, Defendants abused their discretion by denying benefits in the face of this lack of notice, even under an arbitrary and capricious standard.

## II.      The Evidence Found in Discovery

The court granted Defendants' motion to conduct further discovery and will consider the materials obtained by Defendants. The newly discovered evidence merely confirms what Defendants found in their initial investigation: Martin received assets from Southwestern to cover Plaintiffs' pension liabilities for 1984 to 1989, and some Plaintiffs have received benefits from Martin and others will be eligible to receive such benefits in the future.

## III.     Plaintiffs' Entitlement to Benefits

The third question before the court is whether Plaintiffs are entitled to receive pension benefits from the Southwestern Plan.[1]  From the time they asserted their initial claims, Plaintiffs

---

[1] The parties agree that, regardless of the court's decision, Plaintiff Mary Lou Jacobson is entitled to benefits because she left employment with Southwestern before the Southwestern Plan transferred assets and liabilities to the Martin Plan.

have maintained that they did not receive notice that assets and liabilities had been transferred from the Southwestern Plan to the Martin Plan.  According to Plaintiffs, in the absence of the required notice of the transfer, CEMEX retains liabilities under the Southwestern Plan.  The statutory language and case law support Plaintiffs' position.

"[O]ne of ERISA's central goals is to enable plan beneficiaries to learn their rights and obligations at any time."  Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995).  To achieve this goal, ERISA imposes notice and disclosure requirements with which plan administrators must comply.  And federal courts have recognized the importance of these requirements.  See, e.g., Firestone, 489 U.S. at 118 (noting that "Congress' purpose in enacting the ERISA disclosure provisions" was to "ensur[e] that the individual participant knows exactly where he stands with respect to the plan" (quotations omitted)); Jones v. Kodak Med. Assistance Plan, 169 F.3d 1287, 1292 (10th Cir. 1999) ("A plan participant has a right to know where she stands with respect to her benefits."); Cirulis v. UNUM Corp., 321 F.3d 1010, 1014 (10th Cir. 2003) (recognizing "ERISA's mandate that employee-welfare plans be written so as to provide employees with notice of their rights and obligations under the plan").

In cases like this where an administrator attempts to amend or materially modify a plan, ERISA requires the administrator to notify plan participants by providing summaries of the amendments no later than 210 days after the end of the plan year in which the amendment is adopted.  29 U.S.C. § 1024(b)(1).  If an administrator fails to comply with these notice requirements, the amendment is deemed ineffective.  See Curtiss-Wright, 514 U.S. at 76 (proper remedy for violation of notice requirements was to declare the new provision void *ab initio*); Bartlett v. Martin Marietta Operations Support, Inc. Life Ins. Plan, 38 F.3d 514, 517 (10th Cir.

9

1994) (concluding that employee was not bound by amended policy terms of which he had no notice); Member Servs. Life Ins. Co. v. Am. Nat'l Bank & Trust Co. of Sadulpa, 130 F.3d 950, 956 (10th Cir. 1997) ("[A] beneficiary can 'not be bound to terms of the policy of which he had no notice'" (quoting Bartlett, 38 F.3d at 517)); Pickering v. USX Corp., 809 F. Supp. 1501, 1564-65 (D. Utah 1992) (violation of notice requirements rendered amendments to plan documents ineffective).

Here, there is no evidence that Defendants gave notice within 210 days after the end of the 1985 plan year when the Southwestern Plan was amended to transfer assets and liabilities to the Martin Plan or that Defendants ever provided any form of notice about the plan change to Plaintiffs. Both parties produced documents showing notices given for various other plan changes and amendments, but nothing shows that Defendants notified Plaintiffs that the Martin Plan had assumed responsibility for Plaintiffs' pension benefits.

Defendants point to several provisions of the Southwestern Plan to counter Plaintiffs' position that the failure to give notice entitles them to receive benefits. But Defendants did not refer to any plan provisions when they denied Plaintiffs' claims. Defendants relied solely on the Lease Agreement between Southwestern and Martin and on the fact that Martin held assets to cover Plaintiffs' pension benefits. Defendants cannot raise and the court will not consider new grounds that Defendants did not give when they denied Plaintiffs' claims. See Spradley v. Owens-Illinois Hourly Employees Welfare Benefit Plan, 686 F.3d 1135, 1140 (10th Cir. 2012) ("A plan administrator is required by statute to provide a claimant with the specific reasons for a claim denial."); id. at 1140-41 ("A plan administrator may not treat the administrative process as a trial run and offer a post hoc rationale in district court." (quotations omitted)).

10

The same rule applies to Defendants' assertion that no notice was required because this case involved a merger. Defendants now take the position that 29 U.S.C. § 1058, which applies to "mergers and consolidations of plans or transfers of plan assets," is the only relevant statute and does not include a notice requirement. Again, Defendants raised this argument only when they filed their summary judgment briefing in this case. From the outset, Plaintiffs have claimed that they are entitled to benefits because they did not receive notice that the Southwestern Plan had transferred liabilities to the Martin Plan. Despite explicit statements that lack of notice was the basis for Plaintiffs' claims, Defendants did not cite or refer to § 1058 as a statutory basis to overcome the lack of notice. Defendants may not provide this explanation now for the first time.

 Defendants rely on Chastain v. AT&T, 558 F.3d 1177 (10th Cir. 2009), to argue that Plaintiffs do not have standing to recover benefits under the Southwestern Plan. Defendants again failed to articulate their standing argument in their denial letters. But, in any event, the facts in Chastain are distinguishable from the facts in this case. The Chastain plaintiffs were participants under AT&T's pension plan. After the plaintiffs retired, "AT&T spun off Lucent as a separate corporation," and "transferred certain participants in the AT&T Plan, including the [plaintiffs], to the Lucent Retirement Income Plan." Id. at 1179. Significantly, the court found that "[t]he [plaintiffs] were aware of the transfer." Id. Years later, when Lucent eliminated certain benefits from its plan, the plaintiffs sued AT&T, seeking to recover the benefits they had lost. Id. Because AT&T had taken the necessary steps to transfer its plan obligations to Lucent, the court held that the plaintiffs were no longer members of AT&T's plan and did not have a colorable claim to benefits that would give them standing to sue AT&T under ERISA. Id. at 1181-83.

11

Unlike Chastain, this is not a case where the plaintiffs had notice of the plan change but later were unhappy with the new plan's choices about benefits.  Here, as explained above, because Plaintiffs did not receive notice, the transfer is void and Plaintiffs have standing to assert claims against Defendants.

Defendants' final argument is that Plaintiffs cannot recover because they have received or are entitled to receive benefits from the Martin Plan.  In essence, Defendants reiterate their original basis for denial and argue that Plaintiffs cannot receive a double recovery of ERISA benefits. Plaintiffs contend that they are not seeking a double recovery at all.  Rather, Plaintiffs view the Southwestern Plan and the Martin Plan as separate, with each providing independent benefits to Plaintiffs.[2]  The court recognizes that in ERISA cases involving severance benefits, courts have attempted to avoid double recovery of such benefits.  See, e.g., Awbrey v. Pennzoil Company, 961 F.2d 928, 931 (10th Cir. 1992) (where employment was never interrupted, "severance pay would be an unjustified windfall to the employee"); Harms v. Cavenham Forest Indus., Inc., 984 F.2d 686, 688 (5th Cir. 1993) ("[T]he beneficiaries were not entitled to a double-recovery windfall by way of collecting severance payments from both plans . . . .").

Significantly, none of these cases involved a situation where the plaintiffs claimed lack of notice as the basis for their claims.  The court recognizes that Plaintiffs may potentially recover benefits under both the Southwestern Plan and the Martin Plan, but under ERISA, employers

---

[2] At oral argument, Plaintiffs' counsel opined that the Martin Plan was not meant to replace the Southwestern Plan but instead was used as a "recruiting tool" by which Martin promised to give credit for Plaintiffs' years of service with Southwestern, as an incentive for Plaintiffs to continue as employees at the Leamington plant. Nothing in the record supports this position.

and/or plan administrators must give notice of plan changes like the one in this case.  The parties have not cited any authority to support the conclusion that the policy against double recovery overcomes Defendants' failure to comply with the statutory notice requirements.

### IV.    Civil Penalties

Finally, Plaintiffs maintain they are entitled to recover civil penalties under 29 U.S.C. § 1132, which imposes penalties of up to $100 per day if the administrator "fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary."  29 U.S.C. § 1132(c)(1).  But civil penalties are not available where the "failure or refusal results from matters reasonably beyond the control of the administrator."  Id.

Plaintiffs maintain that in 2011, they requested documents and information about their benefits under the Southwestern Plan.  Defendants did not produce any documents or information but have explained that they did not have the materials to provide to Plaintiffs.[3]  Instead, all information and records were transferred to Martin. Defendants had no accrued benefit statements to give to Plaintiffs.  And Defendants did not have salary numbers for Plaintiffs, which would have been necessary to provide the information Plaintiffs sought.  Plaintiffs have not produced any evidence showing that Defendants had access to but simply refused to produce the documents and information.  Because Defendants did not have what Plaintiffs requested, the failure to produce the documents and information does not warrant an award of civil penalties.

---

[3] Defendants also argue that they had no obligation to respond to Plaintiffs' requests because Plaintiffs had no colorable claim to benefits and therefore could not be considered "participants" of the Southwestern Plan.  As explained above, the court disagrees with this argument because Plaintiffs had a colorable claim based on ERISA's notice provisions.

In addition, Plaintiffs have not shown that they have suffered any harm or prejudice as a result of Defendants' failure to produce the documents and information.  In the absence of harm to Plaintiffs, the court declines to impose penalties.  See CIGNA Corp. v. Amara, 131 S. Ct. 1866, 1881-82 (2011) (to obtain civil penalties, a plaintiff "must show that the violation injured him or her"); Kerber v. Qwest Group Life Ins. Plan, 656 F. Supp. 2d 1279, 1296 (D. Colo. 2009) (in determining whether to impose penalties, "a court may consider prejudice to the plaintiffs from the delay in or failure to obtain the documents, bad faith on the part of the plan administrator in failing to produce the documents, and the extent of the failure").

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (Dkt. No. 42) is GRANTED IN PART AND DENIED IN PART.  The motion is granted on the issue of Plaintiffs' entitlement to benefits but denied on the issue of civil penalties.  Defendants' Cross-Motion for Summary Judgment or Alternatively Motion for Judgment on Administrative Record (Dkt. No. 53) is also GRANTED IN PART AND DENIED IN PART.  The motion is granted as to Plaintiffs' civil penalties claim but denied on the issue of Plaintiffs' entitlement to benefits.

DATED this 29th day of December, 2014.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge